UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GYLNNIS WAGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05-CV-1901 (JCH) |
| ) | |
| CITY OF PINE LAWN, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

The matter is before the Court on Defendants City of Pine Lawn, Missouri ("Pine Lawn") and Adrian Roberts' Motion for Summary Judgment (Doc. No. 41), filed December 21, 2007. The matter is fully briefed and ready for disposition.

**BACKGROUND**

In October 2003, Adrian Roberts ("Roberts") and Robert Sampson ("Sampson") were both employed by Pine Lawn as police officers. (First Am. Compl., Doc. No. 20 at ¶ 20). On October 19, 2003, Roberts and Sampson went to Plaintiff's home to execute an arrest warrant for unpaid traffic tickets.[1] (Defs.' Statement of Material Facts ("Defs.' Facts"), Doc. No. 43 at ¶ 1, Ex. B p. 25). Plaintiff allowed them to enter her home, but told them that she could not leave because she was watching young children. (Id. at ¶¶ 2-3). Roberts allowed her to call a relative to could come over and watch the children. (Id.). While talking on the phone, Plaintiff began to walk around her house. (Id. at ¶ 4). The parties differ about what happened next.

---

[1]Plaintiff had failed to appear in court on six occasions. (Defs.' Facts at Ex. C ¶ 3).

Plaintiff testified that after letting the officers in, she proceeded to walk down a hallway to go lock the side door. (Resp., Doc. No. 45 at Glynnis Wagner Dep. ("G. Wagner Dep.") p. 26). Plaintiff could not recall if she tried to reach into a file cabinet while in this hallway. (Id. at pp. 34-35). Plaintiff stated that Roberts suddenly grabbed her right arm and pushed it behind her back so that her "hand . . . went . . . in the back of [her] head." (Id. at p. 30). He then asked, "you want to resist arrest?" (Id. at p. 26) She responded by screaming, "why are you doing this?" and "I invited you into my house." (Id. at Forrest Wagner Dep. p. 13). While this exchange occurred, Roberts repeatedly pushed her shoulder into a file cabinet in the hallway. (Id. at G. Wagner Dep. p. 38). She told him to stop, but he responded by stating "you're resisting arrest" and putting "his right knee in [her] back . . . to push [her] down on the floor." (Id. at p. 32). After being pushed to the floor, Robert handcuffed her with her arms behind her back and picked her up by the handcuffs. (Id. at p. 33, 36).

Roberts and Sampson provide a different account of the incident. As Plaintiff walked through the house, Roberts claims that she spoke "excitedly on the telephone" and "argued with" him. (Defs.' Facts at Ex. C ¶ 12). In the hallway, both Roberts and Sampson saw Plaintiff pick up a shovel before putting it back down. (Id. at Ex. A ¶ 8, Ex. C ¶ 14). She then attempted to reach into a file cabinet, and Roberts moved her hand away from the drawer and shut it. (Id. at Ex. C ¶ 17). Roberts, concerned for his safety, warned her "not to reach for anything in the drawer without allowing me to look . . . first." (Id. at Ex C. ¶¶ 17-18). In response, Plaintiff "yelled that she was not a criminal and again opened the drawer." (Id. at Ex. C ¶ 19). Roberts again removed her hand from the drawer, prompting Plaintiff to begin struggling with him. (Id. at ¶ 20). Roberts then restrained her arm and attempted to handcuff her. (Id. at ¶¶ 21-22). Plaintiff continued to struggle, so he took her to the ground using a police technique employed to gain control of individuals. (Id. at ¶¶ 23-27). Roberts

denies putting his knee in her back, twisting her arms, or picking her up by the handcuffs. (Id. at ¶ 28, 31, 36).

Plaintiff testified that following this incident, she had deep bruises on her shoulder, but she did not have any pain until the next day. (Resp. at G. Wagner Dep. 42). During the incident, she felt a pulling in her arms and a twisting in both of her shoulders. (Id. at p. 43). She claims that she felt "intense pain the next day. My whole arm was hurting, throbbing all the way down to my fingers." (Id. at p. 47). About a week later, her back began to hurt. (Id. at p. 44). She claims that her shoulders and arms still hurt. (Id. at pp. 47-48). At the police station immediately following this incident, Plaintiff was seen by paramedics because her blood pressure was too high. (Defs.' Facts at Ex. C p. 8). At that time, Plaintiff did not complain of pain to the paramedics. (Id. at Ex. B p. 81).

Plaintiff's medical records show that she was admitted to the hospital on August 8, 2000 with lower back pain. (Id. at Ex. E p. 1). The admission form states that she suffered back pain off and on for several years. (Id.). At that time, she received a MRI of her lumbar spine, which revealed degenerative disk disease and a central disk bulge. (Id. at Ex. E p. 3). On October 8, 2003, she visited her treating doctor complaining of lower back pain. (Id. at Ex. F). On October 15, 2003, Plaintiff was sent to physical therapy for an evaluation of her back. (Id. at Ex. G).

Dr. John Wagner ("Dr. Wagner"), Defendants' expert witness, concluded that Plaintiff's back pain is not related to the October 19, 2003 incident. Rather, he believes her preexisting back problems caused her back pain. (Id. at Ex. D p. 5). Similarly, he concluded that she had preexisting shoulder problems and found no evidence of an injury to the shoulder or rotator cuffs that was consistent with Plaintiff's description of the October 19, 2003 incident. (Id. at pp. 4-5). On September 6, 2007, Dr. Manish Suthar ("Dr. Suthar"), Plaintiff's treating physician, concluded that her injuries were not related to the October 2003 incident "in any form." (Id. at Ex. I p. 7). On September 11, 2007, Dr.

Suthar revised his opinion after speaking to one of Plaintiff's previous doctors. He could not "attribute all her low back problems" to the October 2003 incident, but opined that "it is possible for the October 2003 (sic) to have resulted and developed some of the symptoms Ms. Wagner is now experiencing." (Id. at p. 4).

Both Roberts and Sampson graduated from police academies. (Id. at Ex. A ¶ 16, Ex. C ¶ 26). They are both currently certified by the Missouri Department of Public Safety and have maintained this certification by fulfilling Missouri's continuing education requirements. (Id. at Ex. A ¶ 23, Ex. C ¶ 40). Their police chief characterizes them as "experienced officers." (Id. at Ex. H ¶ 5). They have received training about the proper use of force and arrest techniques. (Id. at Ex. A ¶¶ 17, 24, Ex. C ¶¶ 26. 41). Specifically, they know that they are only allowed use the amount of force reasonably necessary to effectuate an arrest. (Id. at Ex. A ¶ 25, Ex. C. ¶ 41).

Prior to this incident, neither officer had been accused of using excessive force. (Id. at Ex. H ¶ 7). Furthermore, Pine Lawn Police Chief Donald Hardy ("Chief Hardy") explained that his police department prohibits the use of excessive force. (Id. at ¶¶ 8-9). He further explained that he, or the Federal Bureau of Investigation ("FBI"), investigates all claims of excessive force. (Id. at ¶ 11). As such, he states that he does not know of any pattern or practice of Pine Lawn police officers using excessive force. (Id. at ¶ 13). In the last ten years, five excessive force claims have been brought against Pine Lawn police officers. (Resp. at Def.'s Ans. to Pl.'s Interrogs. p. 3).

On August 1, 2006, Plaintiff filed her First Amended Complaint (Doc. No. 20) alleging the following claims: Count I– violation of 42 U.S.C. § 1983 by Roberts and Sampson for use of excessive force; Count II– violation of § 1983 by Pine Lawn and Pine Lawn Police Department for failing to train and supervise Roberts and Sampson; and Count III– Assault and Battery by Roberts and Sampson. On November 7, 2006, the Court dismissed Defendant Pine Lawn Police Department

with prejudice because it is not a suable entity. (Order of Nov. 7, 2006, Doc. No. 32). On February 20, 2007, the Court dismissed the claims against Sampson after Plaintiff failed to effectuate timely service on him. (Docket Text Order of Feb. 20, 2007). Defendants filed their motion for summary judgment on December 21, 2007. (Doc. No. 41).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

# DISCUSSION

## I. Section 1983 Claim against Roberts

Defendants first assert that Count I fails because Roberts used no more force than reasonably necessary to arrest Plaintiff. Additionally, they assert that Roberts is entitled to qualified immunity. (Doc. No. 41). Both of these arguments focus on Plaintiff's lack of an injury. Plaintiff responds that the Eighth Circuit does not require a minimum level of injury in excessive force claims and that genuine issues of fact remain.

The right to be "free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person" and such a violation supports a § 1983 action. Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007). A claim of excessive force is analyzed under an objective reasonableness standard that aks "whether the amount of force used was objectively reasonable under the particular circumstances." Ngo v. Storlie, 495 F.3d 597, 602 (8th Cir. 2007) (quoting Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006)). In assessing the reasonableness of the officer's conduct, the Court looks at the "totality of the circumstances" and focuses on factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Ngo, 495 F.3d at 602 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Reasonableness is determined from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Samuelson v. City of Ulm, 455 F.3d 871, 875 (8th Cir. 2006) (quoting Graham, 490 U.S. at 396). The Supreme Court also notes that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments– in circumstances that are tense, uncertain, and rapidly evolving– about the

amount of force necessary in that situation." Henderson, 439 F.3d at 502 (quoting Graham, 490 U.S. at 396). Finally, courts note that because the right to arrest "carries with it the right to use some degree of physical coercion," not "every push or shove . . . violates the Fourth Amendment." Samuelson, 455 F.3d at 875.

The Eighth Circuit requires a showing of an "actual injury" to proceed with an excessive force claim. Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). A plaintiff sustains actual injuries, for example, when he is bruised or has lacerations. Dawkins v. Green, 50 F.3d 532, 535 (8th Cir. 1995). The Eighth Circuit has left open the question of whether "an excessive force claim requires some minimum level of injury," but has held that "a de minimus use of force or injury is insufficient to support a finding of a constitutional violation." Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000); see also Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) (holding that less than permanent aggravation of existing shoulder condition as well as minor scrapes and bruises are de minimus injuries); Andrews v. Floss, 427 F.3d 813, 818 (8th Cir. 2005) (holding that temporary and slight aggravation of pre-existing condition is a de minimus injury). Applying this reasoning, the Eighth Circuit has found that being handcuffed tightly, without evidence of a long-term or permanent injury, does not amount to excessive force. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003); see also Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990).

Upon consideration, the Court finds that Plaintiff's alleged injuries are enough to survive summary judgment. Plaintiff has put forward evidence that her back injuries may have been caused, or permanently aggravated, by the incident. (Resp. at Sept. 11, 2007 Office Note). This evidence, if believed by the jury, would support a finding that she sustained permanent injuries. See Hanig, 415 F.3d at 824 (holding that a 1.3% permanent impairment in plaintiff's right upper extremity was a sufficiently serious injury). Additionally, genuine issues of material fact prevent the Court from

determining whether Roberts used more force than necessary in arresting Plaintiff because the parties have radically different accounts of the incident. If believed, Plaintiff's verison of the events contains a submissible excessive force claim. Since the veracity of the accounts is a matter for the jury, the Court cannot grant Defendants summary judgment based on this argument.

Defendants also assert that Roberts is entitled to qualified immunity. Officers are entitled to qualified immunity if, "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sanders v. City of Minneapolis, 474 F.3d 523, 526 (8th Cir.2007). When making this determination, the facts are viewed in the light most favorable to the plaintiff. Saucier v. Katz, 533 U.S. 194, 201 (2001).When addressing qualified immunity, the Court "must first determine whether the allegations amount to a constitutional violation, and then, whether that right was clearly established." Sanders, 474 F.3d at 526. The right is considered clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Robinette v. Jones, 476 F.3d 585. 592 (8th Cir. 2007).

Upon consideration, the Court will not dismiss Count I on the basis of qualified immunity. When viewed in the light most favorable to Plaintiff, there is evidence that Roberts' use of force rose to the level of a constitutional violation. Specifically, Plaintiff testified that Roberts, without provocation, slammed her against a file cabinet, threw her to the ground, placed his knee in her back, and lifted her by the handcuffs. (Resp. at G. Wagner Dep. pp. 26-38). Additionally, the prohibition against using excessive force when effecting an arrest is clearly established. Both Roberts and Sampson acknowledge that they know the use of excessive force is prohibited. (Defs.' Facts at Ex. A ¶¶ 24, 25, Ex. C ¶ 41). As such, the Court cannot grant Defendants' summary judgment motion based on this argument.

**II.     Section 1983 Claim against Defendant Pine Lawn**

Defendants assert that Plaintiff cannot prove that the Pine Lawn police had a policy or custom of using excessive force or employed improperly trained officers. Plaintiff counters that Defendants' failure to provide any records of investigations into police conduct shows that tacit authorization for the use of excessive force existed.[2]

A claim brought against a municipality under § 1983 is sustainable only if "a constitutional violation has been committed pursuant to an official custom, policy, or practice of the city or is so pervasive among non policymaking employees of the municipality so as to constitute a custom or usage with the force of law." Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007) (internal citations and quotations omitted).

Upon consideration, the Court finds that Plaintiff has failed to present any evidence that the Pine Lawn police had a policy or custom of police using excessive force. Chief Hardy explained that either he or the FBI investigated excessive force claims. (Defs.' Facts at Ex. H ¶ 11). Chief Hardy did not tolerate the use of excessive force and is not aware of any pattern or practice of Pine Lawn police officers using excessive force. (Id. at ¶ 13). The Pine Lawn police had a policy prohibiting the use of excessive force. (Id. at ¶ 9). All Pine Lawn police officers receive training regarding the proper use of force. (Id. at ¶¶ 3-4). Over the past ten years, there have only been five complaints of excessive force. (Resp. at Def.'s Ans. to Pl.'s Interrogs. p. 4). Additionally, Plaintiff has not produced any

---

[2] Plaintiff complains in her response that Defendants failed adequately to answer her discovery requests regarding Pine Lawn's investigations of excessive force claims. Moreover, she believes that Defendants' lack of responsiveness illustrates Pine Lawn's tacit authorization of the use of excessive force. If Plaintiff took issue with Defendants' discovery responses, the proper remedy was to file a motion to compel. See Fed. R. Civ. P. 37(a)(1), (a)(3)(B), (a)(4). The Court required that motions to compel could not be filed more than eleven days after the discovery deadline of November 30, 2007. (Case Management Order, Doc. No. 37 p. 2). As such these complaints are untimely and irrelevant.

evidence that these complaints were ignored. See Rogers v. City of Little Rock,152 F.3d 790, 799 (8th Cir. 1998). As such, the Court will grant Defendants summary judgment on Count II.

### III.     State Law Tort Claims

Defendants assert that Roberts cannot be held liable for assault and battery because he is protected by the official immunity doctrine. Plaintiff responds that fact issues prevent the Court from applying this doctrine.

The official immunity doctrine insulates public officials "from suit in their individual capacities when liability arises from discretionary acts or omissions" taken by them. Betts-Lucas v. Hartmann, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002). This doctrine, however, does not prevent liability for failure to perform a ministerial duty. Brown v. Tate, 888 S.W.2d 413, 415 (Mo. Ct. App. 1994). A discretionary act requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or a course pursued." Deuser v. King, 24 S.W.3d 251, 254 (Mo. Ct. App. 2000) (quoting Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984)). In contrast, a ministerial act is "of a clerical nature and is performed in a prescribed manner according to legal mandate without regard to the public official's personal judgment or opinion." Id.

Upon consideration, executing an arrest warrant is a discretionary act. Missouri courts have held that similar acts requiring the use of professional police judgment are discretionary acts. Deciding whether to arrest someone is a discretionary act. Blue v. Harrah's N. Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). Similarly, the decision on how to execute an arrest is a discretionary function. Green v. Denison, 738 S.W.2d 861, 866 (Mo. 1987). The execution of a search warrant is a discretionary act. DaVee v. Mathis, 812 S.W.2d 816 (Mo. Ct. App. 1991). Considering the

similarities between these functions and that of executing an arrest warrant, the Court finds Roberts and Sampson were performing a discretionary act when they arrested Plaintiff.

Official immunity does not apply, however, if the discretionary acts were done in bad faith or with malice. Blue, 170 S.W.3d at 479 (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986). Bad faith or malice generally requires "actual intent to cause injury." Davis v. Bd. of Educ. of City of St. Louis, 963 S.W.2d 679, 689 (Mo. Ct. App. 1998). The Missouri Supreme Court explains that a defendant acts with malice when he "wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Adolf, 706 S.W.2d at 447.[3]

Upon consideration, the official immunity doctrine does not bar Plaintiff's claims because Plaintiff has presented evidence, namely her testimony, that Roberts acted with malice. As previously stated, she has alleged that he slammed her shoulder against the wall, threw her to the ground, put his foot in her back, and picked her up by the hand cuffs. (Resp. at G. Wagner Dep. pp. 26-38). If believed, a reasonable jury could find that Roberts knew he was taking actions contrary to his duty that he intended to be injurious to Plaintiff. See Hawkins v. Holloway, 316 F.3d 777, 789 (8th Cir. 2003). As such, the Court will not grant summary judgment on Count III.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 41) is **GRANTED** in part and **DENIED** in part.

---

[3] Defendants assert that the Court should look to Minnesota law when interpreting this standard because Minnesota and Missouri law are identical on this point. See Wertish, 433 F.3d at 1067 (discussing Minnesota law). Upon consideration, the Court finds that looking to Minnesota law is unnecessary.

**IT IS FURTHER ORDERED** that Count II of Plaintiff's First Amended Complaint is **DISMISSED**.


Dated this 7th day of February, 2008.

                                               /s/ Jean C. Hamilton
                                               UNITED STATES DISTRICT JUDGE